Robert J. Maynes, ISB No. 6905
Stephen K. Madsen, ISB No. 6253
**MAYNES TAGGART PLLC**
P. O. Box 3005
Idaho Falls, ID 83403
Telephone: (208) 552-6442
Facsimile: (208) 524-6095
Email: rmaynes@maynestaggart.com
            smadsen@maynestaggart.com

*Attorneys for Plaintiff*

UNITED STATES BANKRUPTCY COURT

DISTRICT OF IDAHO

| | |
|---|---|
| In Re:<br><br>KINGSTON, DAVID ORVILLE,<br><br>    Debtor. | Case No. 11-40128 JMM<br><br>Chapter 11 |
| DAVID ORVILLE KINGSTON,<br><br>    Plaintiff,<br><br>    vs.<br><br>BANK OF AMERICA, N.A., successor by merger to BAC Home Loans Servicing, L.P. f/k/a Countrywide Home Loans Servicing, LP, successor to Countrywide Home Loans, Inc.; FNMAACT/ACT InvestorBlock 313 FNMA MBS Pool Number 431614; FEDERAL NATIONAL MORTGAGE ASSOCIATION (FNMA) a/k/a Fannie Mae, a Federally chartered corporation; DOES 1-10, unknown business entities; and DOES 11-20, unknown individuals.<br><br>    Defendants. | Adversary Case No. 18-08044 JMM |

## SECOND AMENDED COMPLAINT

COMES NOW THE Plaintiff, David Orville Kingston, Chapter 11 Debtor ("Debtor"), by and through his counsel, Maynes Taggart PLLC, and alleges as follows:

## <u>JURISDICTION AND VENUE</u>

1.     This Court has jurisdiction over this adversary proceeding pursuant to 28 U.S.C. §§ 1334 and 157, 11 U.S.C. §§ 105(a), 362 and 1141, Article XI of Debtor's confirmed plan of reorganization, and pursuant to the Rules of this Court and the United States District Court for the District of Idaho, in that this action arises in and relates to the Chapter 11 Bankruptcy Case filed by the above referenced debtor on February 3, 2011 as Case No. 11-40128-JDP.

2.     This proceeding is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(A), (C), (L) and/or (O), and to the extent that it is found to be a non-core proceeding that is otherwise related to this bankruptcy case, the non-core matters, if any, are so inextricably linked with core matters that this Court's exercise of jurisdiction is proper.

3.     Venue is proper in this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

## <u>PARTIES</u>

4.     Plaintiff is David Orville Kingston, the Chapter 11 Debtor ("Debtor").

5.     Defendant, Bank of America, N.A., is a national banking institution conducting business throughout the United States, including in the State of Idaho, and is the successor by merger to BAC Home Loans Servicing, L.P. formerly known as Countrywide Home Loans Servicing, L.P., successor to Countrywide Home Loans, Inc.

Bank of America, N.A. was the original note holder (i.e. owner) of the Loan (as that term is defined below) and also served as a servicer of the Loan.

6.      Defendant, FNMAACT/ACT InvestorBlock 313 FNMA MBS Pool Number 431614, who is the investor or owner of the Loan (as that term is defined below).

7.      Defendant, Federal National Mortgage Association (FNMA), a/k/a Fannie Mae, a Federally chartered corporation and subsequent note holder of the Loan (as that term is defined below).

8.      Defendant(s), Does 1-10 are unknown business entities who are subsequent note holders, servicers or agents of note holders and servicers, of the Loan (as that term is defined below) or who may otherwise have an interest in the subject matter of this adversary proceeding, whose identities are currently unknown.  Plaintiff reserves the right to amend this Complaint at such time as the identities of these Defendants are discovered.

9.      Defendant(s), Does 11-20 are unknown individuals who are subsequent note holders, servicers or agents of note holders and servicers, of the Loan (as that term is defined below) or who may otherwise have an interest in the subject matter of this adversary proceeding, whose identities are currently unknown.  Plaintiff reserves the right to amend this Complaint at such time as the identities of these Defendants are discovered.

10.     On information and belief, Defendants, and each of them, have assumed liability, including individually, by agreement and/or by law, and are joint and severally liable for the damages asserted herein.

11.    On information and belief, at all times mentioned herein, Defendants were the agents, principals, employees, servants, partners, joint venturers, and representatives of each other.  In doing the acts alleged herein, the Defendants, and each of them, were acting within the scope and course of their authority as such agents, principals, employees, servants, partners, joint venturers, and representatives, and were acting with the permission and consent of the other Defendants.

12.    As set forth above, Defendants were either note holders or loan servicers. By agreement between the two, loan servicers serviced the Loan, acting as the note holder's agent, and with its express authority.

13.    The foregoing Defendants are referred to collectively herein as the "Defendants".

## FACTUAL ALLEGATIONS

14.    On or about March 13, 2007, approximately four years prior to the filing of Debtor's petition, Debtor entered into an *Interest Only Adjustable Rate Note* and *Deed of Trust* (the "Loan") with Countrywide Home Loans, Inc. for a property located at 5250 S. Rainbow Boulevard, Unit 1061, Las Vegas, NV ("Unit 1061").

15.    At some point in time after Debtor entered into the Loan, Countrywide Home Loans, Inc. was succeeded by BAC Home Loans Servicing, LP ("BAC") f/k/a Countrywide Home Loans Servicing LP.

16.    On February 3, 2011, Debtor filed a Chapter 11 bankruptcy petition ("Petition Date"). By operation of law,[1] Debtor's filing of his petition triggered an automatic stay, preventing creditors from continuing or instigating collection efforts and/or harassment of the Debtor.

---

[1] See generally 11 U.S.C. §§ 105 and 362.

17.    On April 21, 2011, BAC filed *Proof of Claim* (Claim 8), as a secured claim based on a deed of trust related to Unit 1061.

18.    Bank of America, N.A. ("BANA") is the successor by merger to BAC Home Loans Servicing, which merger took place in approximately June of 2011.

### PLAN TREATMENT AND
### ADEQUATE PROTECTION STIPULATION

19.    During the course of the chapter 11 case, Debtor and BANA entered into a *Stipulation Between David O. Kingston and Bank of America, NA for: (1) Plan Treatment; (2) Use of Cash Collateral/Reimbursement of § 506(c) Expenses; and (3) Surrender of 1031 S. and 2051 S. Island Green Drive, Coeur D'Alene, Idaho* (Doc. 159, pp. 5-9)[2] (the "Stipulation") on August 12, 2011.   A true and correct copy of the Stipulation is attached hereto as Exhibit "A" and incorporated herein by reference.

20.    At the time of, and in the Stipulation, BANA represented that it was the owner of the Loan.

21.    Through the Stipulation, Debtor and BANA stipulated that the current fair market value of ten (10) properties located at 5250 S. Rainbow Boulevard (also referred to in the Stipulation as the Spanish Palms Condominiums, SP Units or the LV Properties) would be a "Cram Down Amount".   Specifically, the fair market value and Cram Down Amount of Unit 1061 was stipulated to be $76,000.00.  Ex. A at Paragraph 1.

22.    The Stipulation further provided that, "[c]ommencing within fifteen (15) days after entry of a Order approving this Stipulation and continuing monthly thereafter, the Debtor shall, as adequate protection and plan treatment, pay monthly payments from the rents associated with the LV properties." Ex. A at Paragraph 2.

---

[2] Unless stated otherwise, all references to docket numbers herein shall refer to Debtor's bankruptcy case, Case No. 11-40128-JDP.

23.    The monthly payment for Unit 1061 was set at $362.84 and was to be applied to interest and principal on the Cram Down Amount.  *Id.*

24.    Interest was stipulated at a fixed rate of 4.0% a.p.r. and the Stipulation also stated that, "Cram Down Amounts shall be amortized on a thirty-year (30-year) term commencing on the date of Court approval." *Id.* at Paragraphs 3 and 4.

25.    In exchange for the terms in the Stipulation, the Debtor agreed to surrender his interest in 1031 and 2051 S. Island Green Drive, Coeur d'Alene, ID.  *Id.* at Paragraph 8.

26.    The Debtor did in fact surrender his interest in 1031 and 2051 S. Island Green Drive, Coeur d'Alene, ID.

27.    The Debtor further agreed in the Stipulation to incorporate the Stipulation into any proposed chapter 11 plan.  *Id.* at Paragraph 9.

> The Debtor hereby agrees to incorporate the terms of the Stipulation in any proposed Plan of Reorganization submitted by the Debtor for confirmation and BOA is willing to consent to such a Plan of Reorganization under the terms and conditions stated herein.  *Id.* (emphasis added)

28.    Notably, Debtor and BANA did not include any additional terms of the Loan or Deed of Trust into the Stipulation.

29.    On August 31, 2011 the Bankruptcy Court entered its *Order Granting Motion for Approval of Agreement Relating to Providing Adequate Protection and Use of Cash Collateral Pursuant to Rule 4001(d)* (Doc. 171) (the "Approval Order") by which it ordered that the Stipulation be approved.  A true and correct copy of the Approval Order is attached hereto as Exhibit "B" and incorporated herein by reference.

30.    Pursuant to the terms of the approved Stipulation, Debtor's payment obligations commenced on August 31, 2011 (the "Payment Commencement Date") and were due by September 15, 2011 and the 15th of each month thereafter (the "Payment Due Date"), thus superseding all other terms and conditions of the Loan and related deed of trust between Debtor and BANA.

31.    Since the Payment Commencement Date, Debtor has timely made all payments on Unit 1061 pursuant to the terms of the Stipulation.

## STAY VIOLATIONS IMMEDIATELY COMMENCE

32.    Immediately following entry of the Approval Order, BANA began and continued sending payment demands inconsistent with the Stipulation.  For example, attached hereto as Exhibit "C", which is and incorporated herein by reference, is a copy of the BANA Notice dated September 6, 2012, wherein BANA sets forth a schedule of fees associated with the servicing of Debtor's account, including Late Fees, Release Fees, and an Annual Fee, although the treatment of the loan under the Approval Order and plan does not allow such fees to be charged.

33.    On information and belief, similar demands continued to be sent to the Debtor on a regular monthly basis throughout the bankruptcy case, post-confirmation of Debtor's plan and post-bankruptcy case closure.

## PLAN CONFIRMATION AND CASE CLOSURE

34.    Subsequent to entry of the Approval Order, the stipulated treatment of the ten (10) Rainbow Boulevard properties was incorporated into Debtor's *Third Amended Chapter 11 Plan of Reorganization* (Doc. 401) as Class 4.

35.    On December 20, 2012 the Bankruptcy Court entered an *Order Confirming Chapter 11 Plan* (Doc. 496) (the "Confirmation Order"), confirming the Debtor's *Third Amended Chapter 11 Plan of* Reorganization (the "Confirmed Plan")(Doc. 496-1), including the stipulated treatment of the secured claim on Unit 1061 of the Rainbow Boulevard properties.  True and correct copies of the Confirmation Order and Confirmed Plan are attached hereto as Exhibits "D" and "E", respectively, which are incorporated herein by reference.

36.    On December 23, 2012, notice of the Confirmed Plan and the Confirmation Order was provided to BANA through counsel of record.  A true and correct copy of the BNC Notice of the Confirmation Order, Doc. 500 is attached hereto as Exhibit "F" and incorporated herein by reference.  See specifically Ex. "F" at p. 11 (service effected on "David E Leta on behalf of Creditor Bank of America delta@swlaw.com"; "Lance E Olsen on behalf of Creditor BAC Home Loans Servicing, LP ecfid@rcflegal.com"; and "Monte C Gray on behalf of Creditor Bank of America montegray@cableone.net").

37.    These Defendants constitute members of Class 4 of the Confirmed Plan.

38.    The Confirmed Plan, Paragraph 3.3.2, Class 4 incorporates by reference the terms of the Stipulation, as follows:

    3.3.2   Class 4:  Secured Claims of Bank of America with respect to Spanish Palms Condominiums, Las Vegas, NV, Units 1034, 1061, 1062, 1063, 1064, 2034, 2061, 2062, 2063, & 2064.  The allowed secured claims held by members of this class shall be paid in full pursuant to the terms and conditions of that certain *Stipulation Between David O. Kingston and Bank of America, NA for: (1) Plan Treatment; (2) Use of Cash Collateral/Reimbursement of § 506(c) Expenses; and (3) Surrender of 1031 S. and 2051 S. Island Green Drive, Coeur d'Alene, Idaho* (Exhibit "A" to Docket No. 159), which is incorporated herein by reference as if set forth in full.  *Each secured creditor in this class shall retain the lien securing the claim, until the allowed secured claims have been paid as provided herein.*

(Exhibit "E", Doc. 496-1, pp. 10-11).

39.    Section 3.3.2 of the Confirmed Plan incorporated the Stipulation into the plan, and provided that through the Confirmed Plan each secured creditor would retain its lien.  The terms, covenants, etc. of the Loan and Deed of Trust were not included in the Stipulation, nor incorporated into the Confirmed Plan.

40.    The Confirmed Plan further provides that "all holders of claims against . . . Debtor are permanently enjoined" from collection activities.  Exhibit "E" at pp. 29-30.

41.    Paragraph 12.5 of the Confirmed Plan (Doc. 496-1, pp. 29-30) provides that:

**12.5 Injunction.**

Except as otherwise expressly provided in this Plan, all holders of claims against or Interests in Debtor are permanently enjoined, from and after the Effective Date, from (1) commencing or continuing in any manner any action or other proceeding of any kind on

any such claim against or Interest in Debtor or against the property dealt with by this Plan, or Debtor's estate; (2) the enforcement, attachment, collection or recovery by any manner or means of any judgment, award, decree or order against the property dealt with by this Plan or Debtor's estate; and (3) creating, perfecting or enforcing any encumbrance or any kind against the property or interests in property of the Debtor's estate, the Exempt Assets or property dealt with by this Plan.  Further all creditors filing claims in this proceeding shall on the Effective Date of the Plan be required to dismiss Debtor from any action filed in any court.

42.    The Confirmed Plan further provides that the provisions of sections 105 and 362 of the Bankruptcy Code "shall remain in full force and effect during the term of the Plan."  Ex. "E" at p. 32.

43.    Section 14.4 of the Confirmed Plan provides that the obligations set out therein are binding upon any heir, executor, administrator, successor or assign.  *Id.*

44.    Section 14.5 of the Confirmed Plan (Doc. 496-1, p. 32), expressly provides:

**14.5 Term of Injunctions or Stays.**

Unless otherwise provided herein or in the Confirmation Order, all injunctions or stays in effect in the Chapter 11 cases under sections 105 or 362 of the Bankruptcy Code or any order of the Bankruptcy Court, and in existence on the Confirmation Date (excluding any injunctions or stays contained in this Plan or the Confirmation Order), shall remain in full force and effect during the term of the Plan. All injunctions or stays contained in this Plan or the Confirmation Order shall remain in full force and effect in accordance with their terms.

45.    On March 29, 2013, the Bankruptcy Court entered an *Order Closing Chapter 11 Case* (Doc. 549).

## VIOLATIONS CONTINUE AND ESCALATE

46.    On information and belief BANA continued to send inaccurate loan statements and demands for payments each month to Debtor.

47.    Debtor, his personal assistant and his in-house counsel made repeated efforts to telephone BANA to correct the errors, to no avail.

48.    Each telephone call to BANA would result in the Debtor, his personal assistant, or his in-house counsel being shuttled between various departments and individuals with little to no personal understanding of Debtor's obligations under the Stipulation, Approval Order, Confirmed Plan and Confirmation Order.

49.    After countless hours of telephone efforts to correct the ongoing stay violations and breaches of the Confirmed Plan, on January 31, 2013, the Debtor's personal assistant, Janae Kingston, sent a letter to BANA expressing concern that the payments on all ten BANA loans, including the subject Loan, had been misapplied.

50.    In her January 31, 2013 letter to BANA, Ms. Kingston provided a copy of the Stipulation and requested a statement of accounts showing correction of the misapplied payments.

51.    Referencing BANA's failure to correct the stay violations and breaches of
the Confirmed Plan, Ms. Kingston expressly noted:

> Since this has gone on almost two years, there has been plenty of opportunity to correct these loans based upon the court ruling. I realize getting this to the correct people will make a difference of it getting done or not. I am hoping this letter and the enclosures will help get this completed.

A true and correct copy of the January 31, 2013 Letter and enclosures is attached hereto
as Exhibit "G" and incorporated herein by reference.

52.    BANA did not respond to the January 31, 2013 Letter.

53.    On or about February 19, 2013, the Debtor received a Notice of
Assignment, Sale, or Transfer of Ownership of Mortgage Loan dated January 13, 2013
indicating that BANA had sold several of the loans associated with the Rainbow
Boulevard Properties to BofA Merrill Lynch Asset Holdings, Inc. on January 25, 2013
(the "First Notice of Assignment").

54.    According to the First Notice of Assignment, BANA retained the
servicing obligations on the Loan.

55.    In response to the First Notice of Assignment, the Debtor's personal
assistant, Ms. Janae Kingston, sent a letter to BANA and courtesy copied BofA Merrill
Lynch Asset Holdings, Inc. (the "February 19, 2013 Letter") providing copies of the First
Notice of Assignment, the Stipulation (along with the Motion for Approval), and her
January 31, 2013 Letter with enclosures. A true and correct copy of Ms. Kingston's
February 19, 2013 Letter and enclosures is attached hereto as Exhibit "H" and
incorporated herein by reference.

56.    In her February 19, 2013 Letter, Ms. Kingston again notified BANA that the Loans were subject to "cram down" thereby reducing the principal balance, and also adjusting the interest rate and term.

57.    In her February 19, 2013 Letter, Ms. Kingston expressly requested, "If these loans are to be sold, the correct information should be given to the purchaser."

58.    Ms. Kingston further noted:

Bank of America has misapplied payments within the 10 loans Mr. Kingston has, over a period of a year and a half: the loan balances, the interest rate, the payments made, principal, interest and escrow payments are not accurate. These are now, as stated in the court approval, 30 year loans at the interest rate agreed and approved by the court. This needs to be corrected before any one loan is sold to another agency.

59.    Notably, Ms. Kingston concluded her February 19, 2013 Letter with the assertion that "the next letter will be from Mr. Kingston's attorney" if the matter were not corrected.

60.    On February 21, 2013, counsel for Mr. Kingston contacted counsel of record for BANA via email seeking to correct the ongoing stay violations.

61.    In response, BANA's counsel requested a copy of the Confirmed Plan, the Confirmation Order and the Stipulation.  Copies of all three documents, together with the February 19, 2013 Letter and enclosures (which includes the Stipulation), were sent to BOA's counsel via email on February 22, 2013.  A true and correct copy of the February 21-22, 2013 Email Correspondence is attached hereto as Exhibit "I" and incorporated herein by reference.

62.    On February 26, 2013, the paralegal for BANA's counsel contacted Debtor's counsel requesting proof of Debtor's payments because "BoA claims that their system accurately reflects the new terms of the loan and found no discrepancies."

63.    On March 13, 2013, Debtor's counsel forwarded proof of payment, including 95 pages of cancelled checks, via reply email.  A true and correct copy of the February 26 and March 13, 2013 Emails, with attachments, are attached hereto as Exhibit "J" and incorporated herein by reference.

64.    On or about April 3, 2013, BANA responded:

> Per BOA, they will need to conduct a Master File Change to reflect the new terms of the loans. I have asked for BOA to let me know once changes are completed.

Attached hereto as Exhibit "K" is a true and correct copy of the April 3, 2013 Email, which is incorporated herein by reference.

65.    On information and belief, BANA never accurately completed a Master File Change to reflect the new terms of the ten (10) loans, including the Loan.

66.    Additional evidence that BANA was continuing to follow its own policies as opposed to the Confirmed Plan or Confirmation Order came by a Notice dated October 15, 2013, telling Debtor he was not able to pre-pay on the Loan, which stated, "Our policy will not allow mortgage loans to be paid in advance . . ."  Attached hereto as Exhibit "L" is a true and correct copy of the October 15, 2013 Notice, which is incorporated herein by reference.

67.    Further, on information and belief, BANA never advised subsequent note purchasers of the Confirmed Plan, Confirmation Order, Approval Order or Stipulation. This belief is based, in part, on a June 29, 2015 letter from Seterus, Inc. (the "June 29, 2015 Seterus Letter"), indicating that on April 1, 2015 BANA sold Seterus certain loans without providing any bankruptcy information, as follows:

> Our records indicate that the servicing of the loans transferred to Seterus from Bank of America on April 1, 2015. However, information regarding Mr. Kingston's Chapter 11 Bankruptcy was not provided to us at the time of the service transfer, and therefore our system was not updated to reflect the bankruptcy associated the loans until April 24, 2015. As a result, notices and other required documentation that indicated the contractual status of the loans were sent to Mr. Kingston. We apologize for any inconvenience or confusion this issue may have caused.

A true and correct copy of the June 29, 2015 Seterus Letter is attached hereto as Exhibit "M" and incorporated herein by reference.

68.    On or about May 1, 2014, Debtor's personal assistant prepared a summary comparison on the ten (10) loans, showing the inaccurate balances, interest rates and monthly payments being demanded by BANA in comparison to the amounts required under the Stipulation, Approval Order, Confirmed Plan and Confirmation Order. A true and correct copy of the Kingston - BOA Balance, Interest and Monthly Payment Comparison as of May 2014 is attached hereto as Exhibit "N" and incorporated herein by reference.

69.    On September 10, 2014, Debtor's counsel again sent BANA's counsel a letter detailing the history of the ongoing stay violations (the "September 10, 2014 Letter"). A true and correct copy of the September 10, 2014 Letter with enclosures is attached hereto as Exhibit "O" and incorporated herein by reference.

70.    A copy of Exhibit "N" was provided to BANA's counsel as a part of the September 20, 2014 Letter. See Exhibit "O" at p. 221.

71.    As noted in the September 10, 2014 Letter, during all times relevant hereto, BANA and subsequent Defendants, were reporting these loans incorrectly to the credit reporting agencies, damaging Mr. Kingston's credit score. Exhibit "O" at pp. 3 and 223-225.

72.    As noted in the credit reports enclosed in the September 10, 2014 Letter, each of the ten (10) loans were reported in a "Derogatory" condition, with pay status either "Unknown" or "Late 150 Days".  No reference is made to the Confirmed Plan or Stipulation, or payments under the same.  *Id.* at pp. 223-25.

73.    In response to the September 10, 2014 Letter, on October 7, 2017, BANA's counsel sent a letter providing inaccurate payment histories, and asserting that while the loans had been adjusted, two (2) of the ten (10) loans were "Current, paid ahead" while the remaining eight (8) loans were "Past due".  A true and correct copy of the October 7, 2014 Letter with enclosures is attached hereto as Exhibit "P" and incorporated herein by reference.

74.    BANA's modified and revised loan history for Unit 1061 is contained in Exhibit "P" at pp. 26-32, but fails to include all of Debtor's payments on the Loan.  It is unclear why the pagination for Unit 1061 begins on "Page 4" and fails to include "Pages 1-3".

75.    BANA's actions in contravention of the Confirmed Plan also included inaccurate reporting on the Loan to the Consumer Reporting Agencies (CRA). Despite requests by Debtor to correct inaccurately reported information, BANA failed to do so. By correspondence dated December 29, 2016, BANA maintained that the information they provided to the CRA was accurate.  A true and correct copy of the December 29, 2016 Correspondence is attached hereto as Exhibit "Q" and incorporated herein by reference.

76.    On June 1, 2017, Debtor's personal assistant, Janae Kingston, sent a letter to the various loan servicers for each of the ten (10) units that were subject to the

Stipulation.  A true and correct copy of the June 1, 2017 letter is attached hereto as Exhibit "R" and incorporated herein by reference.

77.    Ms. Kingston's June 1st letter again pointed out to all loan servicers that the loans are subject to the Stipulation and Confirmed Plan.  Included with the letter was a copy of the Stipulation, amortization schedules based on the cram down amounts, as well as copies of checks sent with respect to the particular loan/unit.

78.    Exasperated from the continued difficulties in dealing with the bureaucracy of the multiple loan servicers, Ms. Kingston further pleads:


[Spacing Intentional]

This is notice to all owners or servicers: The balances you are carrying under David O Kingston are incorrect, ill-advised upon purchase, and have not followed the court ruling and agreement with Bank of America. This is **a formal notice** that the balances on these loans are incorrect, none should have ever been in foreclosure, and each time you start this process, Mr. Kingston's attorney is required to write letters to inform your companies of failure to abide by the Federal Court ruling.

It is at this point, the continued sale, continued change of servicers is a terrible game that you inflict on your customers, it forces them to be late in your eyes, with no known loan number to be credited properly, send to the wrong servicer or the wrong addresses and then state this is NOT your problem. I believe when you are bound by a Federal court ruling, you in fact do have some responsibility to supply an invoice, a loan number in the notice of change of servicers. Imagine; you trying to figure out which loan when that servicer has multiple loans and they give no more information than their name, the client name and the new servicer.  In the last 3 months, five of the ten loans have changed servicers and/or owners. It seems that this is done on purpose to frustrate, give you an excuse to hold funds before crediting to his account.  I have received these notices even after the check was sent with no indication it was going to be changed beforehand. I have the same vendor who has even changed their address after selling all the loans they had and bought another one. I have had some call and threaten Mr. Kingston to pay the entire overdue balance, which was incorrect; there is NO OVER DUE BALANCE< the loan was sold to them with improper information.  I have never seen anything like this. I am experiencing it at my job, trying to be efficient for my boss, rebuild his credit and because of these actions by servicers, it is taking much more time than it should, making his credit worse because of improper reporting, and  therefore causing stress and inefficiency in my day to day work which I DO take seriously.

 I am sure most of you will ignore this letter, tell me that it has to go to your legal department, delay getting it there and charge more fees, hold the payment in suspense before you credit it so you can charge even more fees. All I can say is take some responsibility for your job, everyone is not a number. Some of us are trying to do the right thing and in that process are being mistreated. I have included in the documents a form that gives me permission to talk on any accounts, please file this in your records. I do plan on calling to get information and get this taken care of so that proper reporting is done. Please get this document to the proper person. I can be reached at 208-522-2365.

Ex. R at pp. 1-2.

79.     On information and belief, none of the loan servicers to whom the letter was sent – Seterus, Inc., Rushmore Loan Management, Fay Servicing, LLC, BANA, or BSI Financial – responded to Ms. Kingston's correspondence or made any substantive changes in their servicing of the loans.

80.     In response to an inquiry by Debtor's In-House Counsel, BANA sent a Notice dated December 15, 2017, which indicated that Bank of America, N.A. was the servicer of the Loan and that FNMAACT/ACT InvestorBlock 313 FNMA MBS Pool

Number 431614 (believed to be a Federal National Mortgage Association, i.e. Fannie Mae, mortgage-backed security trust) was the owner of the Loan. Attached hereto as Exhibit "S" is a true and correct copy of the December 15, 2017 Notice, which is incorporated herein by reference.

81.     This notice clearly articulates an agency relationship between Fannie Mae and BANA. It provides that, "[t]he servicer collects your mortgage payments, sends your billing statements, and provides the day-to-day servicing of your account on the investor's behalf." Exhibit S, p. 1.

82.     The notice provides additional details regarding the agency relationship, including that Fannie Mae has express authority over BANA's actions:

**Bank of America, N.A. is authorized to handle most requests. In cases where Bank of America, N.A. does not have authority to make decisions or otherwise act independently on the investor's behalf in response to your request, Bank of America, N.A. will gather relevant information from you, consult with the investor about your request and communicate the decision.**

**If you have any questions regarding your loan or the servicing of your loan, you should always contact the servicer first at the telephone number or mailing address noted below.**

*Id.* Fannie Mae granted BANA authority to handle most requests, but also provides limitations, i.e. "control", on that authority.

83.     Debtor has made every required monthly payment on the Loan from the Payment Commencement Date to the present. Attached hereto as Exhibit "T" is a summary of all payments by the Debtor on the Loan ("Debtor's Payment Summary").

84.     Defendants have received all of Debtor's payments on the Loan from the Payment Commencement Date to the present. Attached hereto as Exhibit "U" are all of the cancelled checks on the Loan.

85.     As a result of Defendants' failures to follow the Stipulation, Approval Order, Confirmed Plan and Confirmation Order, Debtor has been required to spending

countless hours, including staff time, in responding to Defendants' baseless correspondence and violations, incurred attorneys' fees and expenses, delivery charges in responding to Defendants' violations, and such damages and fees continue to mount.

86.    Further, as a result of Defendants' inaccurate reporting to the various credit reporting agencies, Debtor's credit score has been damaged.

87.    Attached hereto as Exhibit "V" and Exhibit "W" and incorporated herein by reference, are true and correct copies of the Debtor's Redacted Credit Reports as of September 24, 2015 and July 7, 2017, respectively, showing derogatory and inaccurate reporting, including assertions that some of the loans were in foreclosure, by Defendants to the three major credit-reporting agencies.

88.    Debtor has made multiple efforts to get Defendants to correct their credit reporting errors, but Defendants have refused or ignored Debtor's repeated requests.

89.    As a result of Defendants' actions and resulting damage to Debtor's credit score, Debtor and his business have been unable to obtain credit on reasonable terms, thereby negatively impacting Debtor's ability to perform the Confirmed Plan.  Attached hereto as Exhibit "X" and incorporated herein by reference, is a true and correct copy of an October 11, 2018 email from Chase Bank to Debtor indicating denial of a mortgage request due to Debtor's credit score.

90.    As a direct result of Defendants' actions in repeating and continuously violating the Stipulation, Approval Order, Confirmed Plan and Confirmation Order, Debtor was required to reopen the bankruptcy case incurring additional filing fees and U.S. Trustee's quarterly fees that Defendants should be required to reimburse, in an amount according to proof.

91.     Defendants have engaged in a systematic scheme of sending multiple communications of default, missed payments, foreclosure notices, incorrect statements, fees, etc., which are intended to confuse, coerce, intimidate and wear down Debtor, in hopes of causing him to succumb to such erroneous demands.

92.     In some instances, Defendants have posted erroneous foreclosure notices on properties related to the ten (10) loans, and on information and belief on Unit 1034.

93.     Further, on information and belief, each Defendant has provided Debtor with annual Mortgage Interest Statements (Form 1098) that are inaccurate and that have impacted Debtor's tax obligations.  For example, attached hereto as Exhibit "Y" is a true and correct copy of the inaccurate Form 1098 (redacted) received from BSI Financial Services, which is incorporated by reference, that indicates further violations of the Stipulation, Approval Order, Confirmed Plan and Confirmation Order by assessing additional fees and charges not provided for in the Confirmed Plan and/or Stipulation against the Debtor.

94.     The erroneous tax documents from Defendants have further damaged Debtor, requiring increase professional accounting assistance to correct and/or payment of additional taxes.

95.     Defendants' preferred responses to Debtor's repeated demands, as outlined above, have been to simply transfer the note rather than comply with the Stipulation, Approval Order, Confirmed Plan and Confirmation Order.

96.     Upon information and belief, the entities servicing the Loan have changed multiple times.  The loan servicers have similarly failed to follow the terms of the Stipulation, Approval Order, Confirmed Plan and Confirmation Order.

97.    Defendants' actions have resulted in extreme stress and frustration to Debtor, have negatively affected his business reputation and have adversely affected Debtor's credit worthiness, required him to downsize his operations, impairing the Debtor's ability to perform and complete the Confirmed Plan.

98.    Debtor has filed an *Amended Motion for Contempt for Plan Continuing Plan Violations and Ongoing and Willful Violations of the Automatic Stay* (the "Motion") (Doc. 656) in the main bankruptcy case relating to many of the actions of the Defendants set forth above.  Debtor incorporates the Motion herein by reference, as though fully set out herein.

99.    BANA acted as, and was authorized to act, as Fannie Mae's agent with regards to the Loan.  Fannie Mae controlled BOA's actions, and BOA was acting within the Scope of its authority from Fannie Mae while servicing the Loan.  Fannie Mae was therefore responsible and liable for the actions of BOA in servicing the Loan owned by it.

COUNT ONE
(BREACH OF CONTRACT)

100.    Plaintiff realleges paragraphs 1 through 99, and makes the same a part of Count Three as though fully set out herein.

101.    "[A] confirmed Chapter 11 plan 'creates a new contract between the reorganized debtor and its creditors, thereby releasing the reorganized debtor from the obligations previously incurred by the debtor, to the extent provided in the plan.'" *United States v. Goff*, 05.1 IBCR 3, 7 (Bankr. D. Idaho 2005) (citation omitted).

102.    As set forth above, BANA freely and voluntarily entered into the Stipulation with Debtor, which is attached hereto as Exhibit "A", which was incorporated into the Confirmed Plan, the "new contract."  Subsequent Defendants who purchased the

Loan and became note holders, and the servicers acting as agents and under the authority

of the note holders, received the rights and benefits of, but were also bound by the terms

of the Confirmed Plan, pursuant to the terms of the Confirmed Plan (Section 14.4), which

is attached hereto as Exhibit E.

103.    Defendants, by their actions set forth above, have breached the terms of

the Confirmed Plan and the Stipulation, which is incorporated therein.

104.    Such breaches include, by way of illustration and not limitation, requiring

additional payments not required under the Plan, requiring different payment amounts,

misapplying payments, commencing or reporting foreclosure actions, etc.

105.    Defendants have acted in bad faith in performing their obligations under

the Stipulation.

106.    As direct and proximate result of Defendants' actions, Debtor has

sustained hundreds of thousands of dollars in damages, the exact amount to be

determined at trial, but not less than $250,000.00.

107.    Further, pursuant to Nevada Revised Statutes § 18.010, Debtor is entitled

to an award of attorney's fees and costs, in an amount according to proof, but not less

than $50,000.00.


**WHEREFORE, Debtor prays for Judgment against Defendants as follows:**

1.    ON COUNT ONE (BREACH OF CONTRACT):

A.    For a Judgment against Defendants, joint and severally, in

Debtor's favor in an amount according to proof;

      B.     That Debtor be awarded reasonable attorney's fees in the sum of $50,000.00 should the action result in a default judgment against Defendants; if the action is contested, Debtor should be entitled to the attorney's fees and costs incurred;

      C.     For such other and further relief as the Court may deem just.


DATED:      March 12, 2020

          MAYNES TAGGART PLLC

          /s/ *Stephen K. Madsen*
          STEPHEN K. MADSEN

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on March 12, 2020, I filed a copy of the foregoing pleading with the Court via CM/ECF and the following parties are reflected as receiving the Notice of Electronic Filing as CM/ECF Registered Participants:

Elizabeth M. Z. Timmermans on behalf of Defendant Federal National Mortgage Association; Defendant Bank of America Corporation
eztimmermans@mcguirewoods.com, slatta@mcguirewoods.com;
ARobinson@mcguirewoods.com

John F Kurtz, Jr on behalf of Defendant Bank of America Corporation; Defendant Federal National Mortgage Association
jkurtz@hawleytroxell.com, lhanks@hawleytroxell.com

Robert A Muckenfuss on behalf of Defendant Federal National Mortgage Association; Defendant Bank of America Corporation - rmuckenfuss@mcguirewoods.com

Sheila Rae Schwager on behalf of Defendant Bank of America Corporation, dsorg@hawleytroxell.com

And as otherwise noted on the Court's Notice of Electronic Filing.

DATED:      March 12, 2020


 /s/ Stephen K. Madsen
STEPHEN K. MADSEN